IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| FANNIE L. KELSO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05-1071-CV-W-SOW |
| | ) | |
| MICHAEL O. LEVITT, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court are plaintiff's Motion to Reverse the September 2, 2005 Final Decision of the Medicare Appeals Council (Doc. # 6), the Secretary's response, and plaintiff's reply. Plaintiff challenges the final decision of the Medicare Appeals Council denying her request for waiver of reimbursement of Medicare payments. The Court finds that substantial evidence on the record supports the Secretary's decision and therefore plaintiff's motion is denied.

I. Background

Plaintiff Fannie L. Kelso was injured in a motor vehicle accident on May 4, 1998. She received a settlement of $100,000, the policy limit, from her uninsured motorist coverage. In November or December 1999, based on Medicare conditional payments calculated as totaling $16,586.07, Medicare was reimbursed $10,995.21 from the $100,000 settlement.

Mrs. Kelso suffered a broken right femur in the accident and received medical treatment for this injury from Dr. Alfonso Sicat. Plaintiff asserts that as a result of Dr. Sicat's failures to correctly treat the broken leg, a claim of malpractice was made against him. This medical malpractice action related to services and surgery that Dr. Sicat performed in the summer and fall of 1998. Medicare was notified of the malpractice action on September 25, 2000. Medicare

acknowledged the notice in November 2001, and advised counsel for Mrs. Kelso of Medicare's unreduced conditional payment amount in May 2002. Counsel for Mrs. Kelso acknowledged Medicare's subrogation interest in his initial notice to Medicare, and in letters dated December 6, 2001 and March 18, 2002.

On May 3, 2002, Medicare's contractor, Mutual of Omaha, advised of a claim of subrogation in the malpractice litigation for payments totaling $8,934.63. On March 20, 2003, counsel for Mrs. Kelso sent a letter to Mutual of Omaha advising it of the holding of the Fifth Circuit Court of Appeals in Thompson v. Goetzmann, 315 F.3d 457 (5th Cir. 2002). Plaintiff asserted that the case stood for the proposition that Medicare would not be entitled to a subrogation recovery in this action against Dr. Sicat. Apparently this opinion was subsequently withdrawn. Medicare responded in September 2003 that the Fifth Circuit decision, even had it not been withdrawn, would not be applied to beneficiaries residing outside the states covered by the Fifth Circuit.

The malpractice claim was settled in July 2003 for $55,000. Accordingly, Mrs. Kelso was paid by the insurer of Dr. Sicat. By letter dated October 20, 2003, Medicare made a claim against the settlement proceeds in the amount of $6,896.72. In a response dated October 27, 2003, plaintiff suggested that certain expenses may have been previously reimbursed, and that a knee surgery in May 2000 was not related or attributable to the negligence at issue in the malpractice case. Plaintiff noted that she was asserting her right to appeal and that she would be seeking a waiver of recovery.

Plaintiff's letter of appeal dated October 28, 2003, raised four grounds: that recovery should be waived due to financial circumstances; that the reimbursement calculation included

2

expenses unrelated to the negligence at issue in the malpractice action; that the reimbursement calculation included amounts previously repaid; and issued involving prompt payment. A completed request for waiver form was included. The request for waiver included current financial information for Mr. and Mrs. Kelso.

Plaintiff's request for waiver was denied. Medicare determined that its recovery would not be against equity and good conscience when plaintiff received $16,012.21 of the settlement proceeds and Medicare's claim totaled $6,698.72. Plaintiff requested reconsideration by letter dated November 29, 2003. On reconsideration, plaintiff's request for wavier was denied. Plaintiff claims that these decisions did not address the issue of the economic hardship to the Kelso family, nor did the decision address the issue of including expenses that were previously reimbursed. Plaintiff then requested a hearing before an administrative law judge ("ALJ").

The hearing was held on October 15, 2004, before ALJ Susan B. Blaney. Mrs. Kelso testified as to her financial condition and her inability to repay Medicare. She explained that the net recovery from her malpractice settlement was gone as it was used to pay medical and other expenses. In a decision issued on February 23, 2005, ALJ Blaney upheld the denial of waiver and determined that Mrs. Kelso and her counsel were to repay Medicare $6,278.69. Plaintiff appealed the ALJ's decision to the Medicare Appeals Council ("MAC") on March 7, 2005.

On September 2, 2005, the MAC issued its final decision, finding that Medicare had a right to recover the overpayment notwithstanding the Goetzmann issues, that the overpayment was correctly calculated, and that waiver was properly decided. Plaintiff's appeal of the final decision of the MAC was filed in this Court on October 31, 2005.

3

## II. Standard

The Court's review of the final decision of the Secretary is governed by 42 U.S.C. § 1395ff(b), which incorporates 42 U.S.C. § 405(g). Section 405(g) authorizes the Court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the case for a rehearing," and further provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." The Court's review is limited to determining whether the Secretary's decision is supported by "substantial evidence." Hurley v. Bowen, 857 F.2d 907, 912 (2d Cir. 1988).

## III. Discussion

Plaintiff challenges the Secretary's decision on two grounds. First, plaintiff claims that not all of the services for which Medicare claimed reimbursement were related to the malpractice that resulted in the payment of insurance proceeds, and thus not subject to repayment. Second, plaintiff claims that the Secretary should have waived the overpayment. The Court will consider each argument in turn.

A. Overpayment

In the context of a potential Medicare secondary payer recovery, the overpayment is created not with the Medicare payment to a provider of medical services or equipment, but instead with a beneficiary's failure to repay Medicare from the proceeds of an insurance recovery or settlement. "If the beneficiary or other party receives a third party payment, the beneficiary or other party must reimburse Medicare within 60 days." 42 C.F.R. § 411.24(h).

It has been acknowledged that Centers for Medicare Services ("CMS") has the burden of
4

proof to establish that the claimed expenses related to services provided to Mrs. Kelso were as a result of the negligence of Dr. Sicat. The MAC determined that "CMS met its burden by setting forth a detailed billing and accounting for the medical expenses being claimed." Plaintiff claims that these exhibits do not meet the burden of proof requirement and that some payments were for services unrelated to the malpractice. What plaintiff fails to acknowledge is that the charges plaintiff alleges were unrelated were removed from the calculation of Medicare's reimbursement claim during the intermediary appeal process and that Medicare has a method to capture certain procedures as they relate to specific claims. These exhibits constitute substantial evidence on the record as a whole and support the Secretary's determinations and calculations.

B. Waiver

In this case, the Secretary issued a decision denying plaintiff's request for a waiver of an overpayment assessed under the Medicare Secondary Payer ("MSP") statute, 42 U.S.C. § 1395y(b). The statutes and regulations at issue require that an individual be without fault before a waiver can be granted. 42 U.S.C. § 1395gg(c). "[N]o recovery . . . with respect to an individual: (a) who is without fault, and (b) . . recovery would either [defeat the purposes of the Act or be against equity and good conscience.]. Therefore, if a determination is made that plaintiff is at fault, the inquiry would end. If plaintiff is found to not be at fault, the discussion would shift to whether repayment would violate the purposes of the act or violate equity and good conscience.

What constitutes fault on the part of the overpaid individual depends upon whether the facts show that the incorrect payment to the individual resulted from: (a) an incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) failure to

5

furnish information which he knew or should have known to be material; or (c)acceptance of a payment which he either knew or could have been expected to know was incorrect. 20 C.F.R. § 404.507.

In this case, the MAC evaluated and affirmed the ALJ's determination that plaintiff was not without fault in creating the overpayment. The Court finds that this is supported by substantial evidence on the record. There is evidence in the record that plaintiff had knowledge of the MSP reimbursement requirements and failed to reimburse additional payments by Medicare from the then available second insurance recovery. Counsel for Mrs. Kelso acknowledged Medicare's subrogation interest in his initial notice to Medicare, and in letters dated December 6, 2001 and March 18, 2002. In fact, Mrs. Kelso had previously reimbursed Medicare for certain other payments from an earlier insurance recovery. Accordingly, Mrs. Kelso accepted payment which she could have been expected to know was incorrect.

Since the Court finds that Mrs. Kelso was not without fault, it need not reach the issue of equity and good conscience.

## IV. Conclusion

Based on the above, it is hereby

ORDERED that plaintiff's Motion to Reverse the September 2, 2005 Final Decision of the Medicare Appeals Council (Doc. # 6) is denied. The decision of the MAC is affirmed. The Secretary is entitled to recover $6,278.69 from plaintiff.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: April 26, 2006